# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANAY ROHRBAUGH, by and through LINDA ROHRBAUGH and JAMES ROHRBAUGH as Parents and Natural Guardians and in their own right, | : : : : : | 1:16-cv-2358 |
| Plaintiffs, | : : | Hon. John E. Jones III |
| v. | : : : | |
| LINCOLN INTERMEDIATE UNIT, WEST YORK AREA SCHOOL DISTRICT, and MARYANNE KREUZ, | : : : : | |
| Defendants, | : | |

## MEMORANDUM & ORDER

## June 16, 2017

Presently pending before the Court are two motions to dismiss filed by the Defendants. (Docs. 21, 23). Plaintiffs are Ranay Rohrbaugh ("Ranay"), a minor, by and through her parents Linda and James Rohrbaugh, and Linda and James Rohrbaugh individually. Defendants are Lincoln Intermediate Unit ("Lincoln"), West York Area School District ("West York"), and Maryanne Kreuz. Plaintiffs filed an amended complaint on January 27, 2017. (Doc. 16). Count I is against all Defendants and claims a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. ("Section 504"). Count II is against all Defendants and claims a violation of Due Process, 42 U.S.C. § 1983. Count III is against Kreuz only and

1

claims assault and battery under Pennsylvania common law. West York filed a motion to dismiss on February 10, 2017, along with a brief in support. (Docs. 21, 22). Lincoln and Kreuz also filed a motion to dismiss and a brief in support on February 10, 2017. (Docs. 23, 24). Plaintiffs filed a brief in opposition to both motions on March 13, 2017. (Doc. 29). The Defendants filed replies on March 27, 2017. (Docs. 31, 32). The motions are fully briefed and ripe for our review. For the reasons that follow, the motions are granted and the case closed.

I.  BACKGROUND

The parties do not dispute that Ranay is, and was at all times, disabled pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA"), and Section 504. (Doc. 16, ¶ 10). Ranay has been in special education programs in West York since elementary school, which are provided by Lincoln. (*Id*., at ¶ 13). Ranay had an Individualized Education Plan ("IEP"), which noted her continued need for a Personal Care Assistant ("PCA"). (*Id*., at ¶ 16). The IEP noted the need for a PCA to implement her behavior intervention plan and safety in the school environment. (*Id*.). The behavior intervention plan requires the use of de-escalation techniques rather than physical intervention. (*Id*., at ¶ 18). Similarly, Ranay's IEP did not include the use of restraints. (*Id*., at ¶ 17).

On October 17, 2013, Ranay became aggressive in her classroom, but de-escalation techniques were successful and no physical restraint was used. (*Id*., at ¶

20). On November 7, 2014, Ranay's PCA was Kreuz, who had been recently hired by Lincoln and been Ranay's PCA for a short time. (*Id*., at ¶ 21).

During lunchtime in the school cafeteria on November 7, 2014, Kreuz applied a restraint on Ranay, causing bruising and scratches on Ranay's arms, neck, and face. (*Id*., at ¶ 22). The use of the restraint was not authorized by the IEP or any other legitimate purpose, and it was applied incorrectly and inappropriately such that it caused injury to Ranay. (*Id*., at ¶ 25). Contrary to Lincoln's policies, the daily report prepared by Kreuz and sent home with Ranay did not make mention of the use of the restraint. (*Id*., at ¶ 27).

Ranay's classroom teacher, Tabitha Miller, prepared a "Report of Restraint" and provided it to Lincoln and West York. (*Id*., at ¶ 28). Miller called Ranay's mother after school that same day, on November 7, 2014, to inform her of Kreuz's use of a restraint on Ranay. (*Id*., at ¶ 29). In their amended complaint, Plaintiffs allege that Lincoln and West York failed to properly train Kreuz for her position as Ranay's PCA. (*Id*., at ¶ 31).

In Count I, Plaintiffs claim that the Defendants "subjected Ranay to discrimination compared to similarly situated students with IEPs and PCAs, and as compared to all West York Area School District Students," in violation of Section 504 of the Rehabilitation Act. (*Id*., at ¶ 41). Count II is brought pursuant to § 1983 and alleges that the Defendants "violated Ranay's 14th Amendment right to bodily

integrity." (*Id*., at ¶ 49). Counts I and II are brought by all Plaintiffs. Finally, Count III is on behalf of Ranay only and alleges assault and battery against Kreuz. (*Id*., at ¶¶ 56-60).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether the plaintiff has properly pled jurisdiction. *Id.* "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). A factual attack, in contrast, challenges jurisdiction based on facts apart from the pleadings. *Mortensen*, 549 F.2d at 891. "When a defendant attacks subject matter jurisdiction 'in fact,' ... the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting

4

*Mortensen*, 549 F.2d at 891). Here, the Defendants' motions present a factual attack on subject matter jurisdiction due to Plaintiffs' alleged failure to exhaust administrative remedies. *See Jupiter v. United States*, 2014 WL 2505670, at *2 (M.D. Pa. May 28, 2014) (Caputo, J.).

### B. Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds

upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking

6

these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. DISCUSSION

West York moves for the dismissal of Counts I and II on two grounds: (1) this Court lacks subject matter jurisdiction because Plaintiffs did not exhaust administrative remedies under the IDEA; and (2) the claims are barred by the applicable statute of limitations. (Doc. 24, p. 6). Lincoln and Kruez similarly argue that all counts must be dismissed due to Plaintiffs' failure to exhaust their administrative remedies and because they are barred by the statute of limitations. (Doc. 22, pp. 4-5). Lincoln and Kruez also argue that Count III against Kruez must be dismissed because she has immunity. (*Id.*, at p. 14). We start first with the issue of administrative exhaustion, as our ruling on this matter renders consideration of the other arguments unnecessary. We find that the Plaintiffs are required to exhaust

administrative remedies with the IDEA before consideration of the claims by a court and will therefore dismiss the matter without prejudice.

The IDEA ensures "that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). Recognizing the existence of other laws designed to protect children with disabilities, Section 1415(l) states "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws." 20 U.S.C. § 1415(l). The section goes on, however, to specifically state that "before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." *Id*.

The Supreme Court recently addressed the scope of this administrative exhaustion requirement in *Fry v. Napoleon Community Schools, et. al.*, 137 S. Ct. 743 (2017). The Court held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee – what the Act calls a 'free appropriate public education.'" *Fry*, 137 S. Ct. at 748. (hereinafter "FAPE"). Specifically, the Court stated:

> We first hold that to meet the statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the

8

> IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Id.*, at 752. The Court went on to provide some guidance on how courts can determine whether the "crux" or the "gravamen" of a plaintiff's complaint charges the denial of a FAPE, "setting aside any attempts at artful pleading." *Id.*, at 755. The first step is to examine the complaint itself, although "[t]he use (or non-use) of particular labels and terms is not what matters." *Id*. The inquiry does not ride on whether a complaint includes words like FAPE or IEP, or whether it invokes the IDEA at all. *Id*. The proper inquiry is "if she is in essence contesting the adequacy of a special needs program." *Id*.

"In addressing whether a complaint fits that description, a court should attend to the diverse means and ends of the statutes covering persons with disabilities – the IDEA on one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id*. The Court noted that the IDEA protects only children and concerns only their schooling, whereas the ADA protects people with disabilities of all ages both in and outside of school. *Id.*, at 756. "In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Id*. While there is of course some overlap in coverage, the statutory differences illustrate whether the complaint seeks relief for IDEA's obligation to provide a FAPE. *Id*.

9

The Court instructs that "[o]ne clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE" can be found based on the answers to a pair of hypothetical questions." *Id.*, at 756.

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* Finally, the Court instructs to look to "the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute."

Only a handful of courts have rendered opinions analyzing the requirement of IDEA administrative exhaustion post-*Fry*. *See, e.g.*, *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944 (8th Cir. 2017) (holding administrative exhaustion required for complaint based on school repeatedly placing student in physical restraints and isolation); *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 2017 WL 1098829 (N.D. Iowa Mar. 23, 2017) (holding administrative exhaustion was not required for complaint based on teacher dragging student across the

10

carpeted floor); *N.S. by & through J.S. v. Tennessee Dep't of Educ.*, 2017 WL 1347753 (M.D. Tenn. Apr. 12, 2017) (finding that, under a *Fry* analysis, the complaint alleging overuse and misuse of physical restraints and isolation does seek the denial of a FAPE, but that an independent exception to exhaustion applied); *Parrish v. Bentonville Sch. Dist.*, 2017 WL 1086198 (W.D. Ark. Mar. 22, 2017) (holding administrative exhaustion required for complaint based on physical restraints and isolation). Of that small handful, three courts have held that complaints based on the use of physical restraints on disabled students in school required administrative exhaustion. *See Francis Howell Sch. Dist.*, 850 F.3d at 950; *Tennessee Dep't of Educ.*, 2017 WL 1347753 at *11; *Parrish*, 2017 WL 1086198 at *31.

Applying the analysis delineated by the Supreme Court in *Fry*, and consulting the few other opinions rendered post-*Fry*, we hold that the gravamen of the Plaintiffs' amended complaint concerns the denial of a FAPE, and Plaintiffs must therefore exhaust their administrative remedies with the IDEA before bringing civil suit.

Starting first with Plaintiffs' amended complaint, as *Fry* instructs, we note several allegations of significance. First, the parties were identified in accordance with their IDEA definitions; Ranay was classified as "'disabled' pursuant to the IDEA" and West York as a "'Local Education Agency' pursuant to the IDEA".

(Doc. 16, ¶¶ 7, 10). Second, the amended complaint states that Ranay's IEP notes her continued need for a PCA and for implementation of her behavioral intervention plan which requires the use of de-escalation techniques rather than the use of physical intervention. (*Id*., at ¶¶ 15-18). It also notes that her "IEP did not include the use of restraints." (*Id*., at ¶ 17). Third, the amended complaint alleges "Ranay was subjected to discrimination denied the benefits of her IEP and other education services on account of her disability" and alleges discrimination "compared to similarly situated students with IEPs and PCAs." (*Id*., at ¶¶ 39, 41).

Next, it is significant to note that the amended complaint alleges that "[t]he restraint was improper *because it was not authorized by the IEP . . .*" (*Id*., at ¶ 25) (emphasis added). In a similar vein, the amended complaint alleges that "[t]he application of a physical restraint on November 7, 2014, was not necessary because, among other reasons, *de-escalation tactics had not yet failed* and Ranay was not a serious harm to herself." (*Id*., at ¶ 52) (emphasis added). It is clear that Plaintiffs do not allege that the use of physical restraints on Ranay in general is violative of her rights, but that this particular use by Kreuz was not in accordance with the school's policies or her IEP.

Throughout the amended complaint, Plaintiffs make clear that their claims are, in essence, a charge that Ranay was provided with an ineffective PCA:

12

> "Each failed to properly instruct Kreuz regarding Ranay's IEP, specifically the requirement of de-escalation techniques and not to use physical restraints without proper justification." (*Id*., at ¶ 31a).
>
> "Each failed to properly train Kreuz on the proper application of physical restraints and the appropriate circumstances for their use." (*Id*., at ¶ 31b).
>
> "Each failed to train Kreuz and/or failed to ensure Kreuz was properly and appropriately trained to function as a full-time personal care assistant . . ." (*Id*., at 31d).
>
> "Kruez, due to her lack of proper training and placement with a student of Ranay's disability and educational needs . . ." (*Id*., at ¶ 33).
>
> Defendants were aware "of the need to train employees in the proper limited application of restraints." (*Id*., at ¶ 44).
>
> "[D]efendants were deliberately indifferent to the need for proper training and instruction to be provided to Kruez . . ." (*Id*., at ¶ 49).
>
> "[D]efendants' failure to provide proper training and instruction, as set forth more fully above, shocks the conscious . . ." (*Id*., at ¶ 51).

The Defendants' obligation to provide Ranay with an effective PCA, as required by her IEP, is squarely within the IDEA's guarantee to provide a FAPE. The allegation that Kreuz was improperly trained to serve as Ranay's PCA directly challenges the services provided to Ranay, such that the Plaintiffs are "in essence contesting the adequacy of a special needs program." *Fry*, 137 S. Ct. at 755. We also note that in their brief in opposition, in a section discussing exceptions to administrative exhaustion, Plaintiffs specifically state, "Plaintiffs' complaint for damages resulting from Ranay's Personal Care Assistant's single use of an illegal

restraint is best characterized as a failure of implementation of Ranay's IEP." (Doc. 29, p. 9).

Another indicator that the amended complaint seeks relief for a denial of a FAPE is the Plaintiffs' citation to 22 Pa. Code §711.46. (Doc. 16, ¶¶ 49, 50). Section 711 of Title 22 of the Pennsylvania Administrative Code "specifies how the Commonwealth, through the Department, will meet its obligation to ensure that charter schools and cyber charter schools comply with IDEA and its implementing regulations …" 22 Pa. Code § 711.2. Plaintiffs quote to language from the specific section of the code that concerns the strictures of using physical restraints in compliance with the IDEA and individual IEPs. (Doc. 16, ¶¶ 49, 50). Plaintiffs' use of IDEA standards to illustrate the wrongfulness of the Defendants' conduct further supports the conclusion that the gravamen of the amended complaint charges a denial of a FAPE and falls within the purview of the IDEA administrative process.

Finally, turning to the pair of hypothetical questions provided by the Court in *Fry*, we now consider whether Plaintiffs could have brought essentially the same claim if the conduct occurred outside of a school and whether an adult at the school could have brought the same claim. *Fry*, 137 S. Ct. at 756. The answer to both of these questions is no. As the court in *Tennessee Department of Education* recognized, "restraint techniques are not implemented on adult employees or

14

visitors of the . . . schools, nor are they implemented on minors such as the plaintiffs in other public institutions." 2017 WL 1347753 at *11. The conduct alleged in Plaintiffs' amended complaint is unique to a disabled student at school, which indicates that "the complaint probably does concern a FAPE, even if it does not explicitly say so." *Fry*, 137 S. Ct. at 756.

Considering all of these factors, we find that the Plaintiffs' amended complaint seeks relief available under the IDEA- namely, the denial of a FAPE to Ranay. As such, the claims are subject to exhaustion, barring an applicable exception.

Plaintiffs argue that they are excused from complying with the exhaustion requirement because it would be futile and inadequate. (Doc. 29, pp. 8-10). In support, Plaintiffs highlight that the incident was a singular episode of physical harm, the incident did not cause educational harm, and the administrative process cannot remedy anything because Ranay's IEP has always been appropriate in not authorizing physical restraints. (*Id*., at p. 8). Plaintiffs cite to *Joseph M. v. Northeastern Educational Intermediate Unit 19*, 516 F. Supp. 2d 424 (M.D. Pa.) (Caputo, J.) in support of their argument that the futility exception applies. (Doc. 29, p. 8). There, the court held that "[w]hile a challenge to the contents of an IEP would require exhaustion of administrative remedies . . . exhaustion of

administrative remedies when a plaintiff is challenging only a failure to implement an IEP would prove fruitless." *Joseph M.*, 516 F. Supp. 2d at 438.

However, in light of an intervening decision by the Third Circuit, the *Joseph M.* court reversed this holding on a motion for reconsideration, recognizing that "[t]he Third Circuit Court of Appeals specifically held that there was a remedy under IDEA for violations of 'the provision of a free appropriate public education,' regardless of the underlying basis for such a violation." *Joseph M. v. Ne. Educ. Intermediate Unit 19*, 2007 WL 2845004, at *3 (M.D. Pa. Sept. 26, 2007) (citing *A.W. v. The Jersey City Public Schools*, 486 F.3d 791 (3d Cir.2007)). *Joseph M.* therefore provides no support for finding that Plaintiffs are exempt from administrative exhaustion due to futility.

Circumstances that warrant the application of the futility exception include the Plaintiffs previously utilizing the IDEA administrative process, a fully developed factual record and resolved evidentiary issues, where the only issue left for determination is damages, and where the IDEA cannot provide a suitable remedy for the harms alleged. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 281 (3d Cir. 2014). Plaintiffs have not adequately established that any of these circumstances apply. Because we have found that the gravamen of the Plaintiff's amended complaint seeks relief for the denial of a FAPE, the IDEA administrative process is the proper avenue to pursue those claims. Accordingly, Counts I and II

shall be dismissed, without prejudice, for failure to exhaust administrative remedies.

Finally, the court will decline to exercise supplemental jurisdiction over Ranay's remaining tort claim against Kreuz pursuant to 28 U.S.C. § 1367(c)(3) because Plaintiffs' federal claims will be dismissed. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all claims over which it had original jurisdiction. Indeed, the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added). We see no reason justifying our exercise of supplemental jurisdiction over Ranay's claim of assault and battery against Kreuz. Therefore, we shall dismiss Count III without prejudice.

### IV. CONCLUSION

In accordance with the foregoing, we shall grant Defendants' Motions to dismiss. (Docs. 21, 23). A separate order shall issue in accordance with this ruling.